**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Hameen, | No. CV-22-00751-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Dollar Tree Stores Incorporated, | |
| Defendant. | |

At issue is Defendant Dollar Tree Stores, Inc.'s ("Dollar Tree") Motion to Dismiss (Doc. 11, "MTD") to which Plaintiff Michael Hameen filed a Response (Doc. 14, "Resp."), and Defendant filed a Reply (Doc. 15, "Reply"). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court denies Defendant's Motion to Dismiss.

I.     **BACKGROUND**

On May 3, 2022, Plaintiff filed his Complaint raising two race-discrimination claims against Defendant: (1) discrimination in the making of a contract in violation of 42 U.S.C. § 1981 ("Section 1981"); and (2) discrimination in a place of public accommodation in violation of the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1442(B). (Doc. 1, Compl.) As a basis for his claims, Plaintiff alleges the following facts.

At around 8:15 p.m. on the evening of July 23, 2021, Plaintiff, who is African American, visited the Dollar Tree store located at 14175 West Indian School Road in Goodyear, Arizona. (Compl. ¶¶ 1(B), 8.) Plaintiff purchased candles to prepare a surprise

for his wife and returned home. (Compl. ¶ 8.) Once he returned home, Plaintiff realized that he needed more candles and decided to go back to the same Dollar Tree to purchase more candles. (Compl. ¶¶ 8, 9.) The Dollar Tree store had not closed when he returned. (Compl. ¶ 13.) Plaintiff observed a Caucasian woman making a purchase at the register when he arrived back at the store. (Compl. ¶ 9.) He went to the candle aisle. (Compl. ¶ 9.)

In the candle aisle, a white male employee approached Plaintiff. (Compl. ¶ 9.) The male employee told Plaintiff to leave the store in a hostile manner. (Compl. ¶ 9.) Plaintiff politely told the male employee that he wanted to purchase a few more candles. (Compl. ¶ 9.) The male employee continued to be hostile to Plaintiff and told Plaintiff to "get the fuck out." (Compl. ¶¶ 9–10.) In response, Plaintiff told the male employee not "to be an ass about it" and that Plaintiff was a customer and should not be spoken to in that manner. (Compl. ¶ 9.) The male employee threatened to call the police if Plaintiff did not leave the store, and Plaintiff responded that Plaintiff should call the police on the male employee for the way he was talking to Plaintiff. (Compl. ¶ 10.) The male employee told Plaintiff "to get the fuck out" and "suck my dick bitch." (Compl. ¶ 10.)

At this time, a white female employee approached Plaintiff and the male employee. (Compl. ¶ 11.) Plaintiff asked the female employee for a manager and for the male employee's name. (Compl. ¶ 11.) The female employee would not inform Plaintiff the names of the manager or the male employee. (Compl. ¶ 11.) Plaintiff told the female employee that he would contact the store manager the following day and left the store. (Compl. ¶ 11.) The following day, Plaintiff called a store manager, who "did not apologize" to Plaintiff "or take any action." (Compl. ¶ 12.)

On October 6, 2021, Plaintiff filed a charge of public accommodation discrimination with the Arizona Attorney General's Office (Doc. 1-2). On April 6, 2022, the Attorney General's Office dismissed Plaintiff's charge and notified him of his right to pursue a private lawsuit if he chose to do so. (Doc. 1-3.) Plaintiff thereafter filed his Complaint in this Court. Defendant now moves to dismiss Plaintiff's Complaint for failure to state a plausible claim for relief against Defendant on either of his two race-discrimination claims.

## II.     LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679-80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.     ANALYSIS

### A.     Section 1981 Claim

In relevant part, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is

enjoyed by white citizens . . . ." 42 U.S.C § 1981(a). "A plaintiff asserting a § 1981 claim must initially identify an impaired contractual relationship under which the plaintiff has rights . . . [and] must also plausibly allege that the defendant impaired that relationship on account of intentional discrimination." *Astre v. McQuaid*, 804 F. App'x 665, 666 (9th Cir. 2020) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) and *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)). Further, "a plaintiff must initially plead and ultimately prove that, *but for race*, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (emphasis added).

At this stage, Defendant does not contest that Plaintiff has adequately alleged an impaired contractual relationship. (Reply at 2.) However, Defendant argues that Plaintiff has failed to allege sufficient facts to support an inference that it intentionally discriminated against Plaintiff because of his race. (MTD at 4; Reply at 2–5.) The Court disagrees.

A plaintiff in a discrimination case can satisfy his or her burden to plead discriminatory intent by alleging "overt acts coupled with some direct evidence that the defendants' conduct was motivated by racial animus." *Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989). In the absence of direct evidence, a plaintiff can show discriminatory intent by presenting sufficient circumstantial evidence to support an inference of intentional discrimination. *See Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973));[1] *see also*

---

[1] Following the Ninth Circuit's opinion in *Lindsey*, courts in this circuit have used the burden-shifting framework under *McDonnell Douglas* as a guide for determining whether a Section 1981 plaintiff pleads sufficient facts to survive a motion to dismiss. *See, e.g., Nia v. Bank of Am., Nat'l Ass'n*, No. 21-CV-01799-BAS-BGS, 2022 WL 1570012, at *6-7 (S.D. Cal. May 18, 2022); *York v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535, at *2 (D. Ariz. Aug. 13, 2019); *Childs v. Boyd Gaming Corp.*, No. CV-18-00316-GMN-VCF, 2018 WL 4333945, at *4 (D. Nev. Sept. 11, 2018). However, in a recent opinion, the Ninth Circuit stated that the *McDonnell Douglas* framework is "both inapposite to claim sufficiency and inappropriate to apply at the motion to dismiss stage." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1119 (9th Cir. 2022). Although the Ninth Circuit made this statement in a different context, it presents doubt about the propriety of applying the *McDonnell Douglas* framework here. In any event, even if the Court were to apply the framework here, it would find that Plaintiff has pleaded a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he attempted to contract for certain services; (3) he was denied the right to contract for those services; and (4) those services remained available to a similarly situated person

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003) ("[The Supreme Court] ha[s] often acknowledged the utility of circumstantial evidence in discrimination cases.").

Here, Plaintiff concedes that he has no direct evidence of discrimination but argues that he has alleged sufficient facts to establish circumstantial intentional race discrimination. (Resp. at 4.) To support this argument, Plaintiff first points to his allegations regarding the employee's hostile treatment of him, including the white male employee "cursing out" Plaintiff and threatening to call the police; the white female employee's acquiescence to this hostile treatment and refusal to give Plaintiff the name of the male employee or to help Plaintiff; and the manager's refusal to apologize or repudiate the employees' actions. (*Id.* at 4–6.) Defendant persuasively argues these allegations do not appear to relate to Plaintiffs' race and are insufficient, individually or collectively, to raise an inference of intentional discrimination. (Reply at 3–4.) However, Plaintiff further argues that his Complaint establishes discrimination by a "comparator"—namely, the Caucasian woman checking out at the register when he returned to the store. (Resp. at 6.)

Evidence that a similarly situated individual outside of the plaintiff's protected class received more favorable treatment than the plaintiff can raise an inference of intentional discrimination. *See Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. 2016); *see also Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1159 (9th Cir. 2013) (noting that "a plaintiff [may] raise an inference of discrimination by identifying a similarly situated entity who was treated more favorably"). The plaintiff "must plead sufficient detail about the proposed comparator so that the court can reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie*, 186 F. Supp. 3d at 1163; *see, e.g.*, *Banks v. Am. Airlines Grp., Inc.*, No. 20-CV-05495-MCS-GJS, 2021 WL 2119502, at *1–2 (C.D. Cal. Apr. 21, 2021), *aff'd*, No. 21-55538, 2022 WL 1537360 (9th Cir. May 16, 2022) (dismissing a Section 1981 claim for failing to plead sufficient facts about a comparator); *York v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535, at *4 (D. Ariz. Aug. 13,

outside of his protected class—namely, the Caucasian woman who was checking out at the register when Plaintiff returned to the store. *See Lindsey*, 447 F.3d at 1145.

- 5 -

2019) (finding that a Section 1981 plaintiff sufficiently pleaded that "the services for which the plaintiff attempted to contract remained available to those who were not members of the plaintiff's protected class"). "The alleged comparator 'need not be identical, but must be similar in material respects. Materiality depends on the context and is a question of fact that cannot be mechanically resolved.'" *Ent. Studios Network, Inc. v. McDonald's USA, LLC*, No. CV-21-4972 FMO (MAAx), 2022 WL 17078647, at *3 (C.D. Cal. Sept. 16, 2022) (quoting *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1114 (9th Cir. 2011)).

Here, Defendant argues that the Caucasian woman is "not a comparator because she was at the register checking out while Plaintiff was just reentering the store," and was therefore not similarly situated to Plaintiff "in any, let alone all, material respects such that the Court could infer that Plaintiff was treated differently than the white customer because of race." (Reply at 4, citing *Snoqualmie*, 186 F. Supp. 3d at 1163.) Plaintiff argues that the Caucasian woman serves as a comparator because she "was in the store at the same time as [Plaintiff]" and "received service while [Plaintiff] did not." (Resp. at 6.) To support his argument that he has sufficiently pleaded his Section 1981 claim, Plaintiff points to a California district court case, *Ezell v. Edwards Theatres, Inc.* (Resp. at 5.)

In *Ezell*, the plaintiffs, two black women, attended a movie together and whispered to each other, briefly spoke with other patrons, and made audible comments about the movie while the movie played. No. CV-04-6533-SMS, 2006 WL 3782698, at *4 (E.D. Cal. Dec. 21, 2006). At some point, a white woman yelled a highly offensive racial slur and a directive to "shut up" to the plaintiffs and, later, made an insulting gesture towards them. *Id*. The white woman left the theater and returned with two security guards who proceeded to remove the plaintiffs, despite the plaintiffs informing the guards of the white woman's disruptive and insulting behavior. *Id*. at *5–6. The plaintiffs were questioned about their own disruptive behavior, required to show their tickets, and required to leave the theater, unlike the white woman who was allowed to finish the movie. *Id*. at *6–7. The *Ezell* court found that the white woman "was sufficiently similarly situated with Plaintiffs because she was accused of having engaged in conduct that warranted expulsion, but she was not

1    subjected to the same humiliating treatment as Plaintiffs, was not subjected to

2    questioning . . . [and] was not ejected . . . ." *Id.* at *17. In other words, the white woman

3    was a sufficient comparator because the white woman and plaintiffs were engaged in the

4    same activity, which was causing disruption in the movie theater. *Id.*

5          Here, Plaintiff alleges that Defendant's store had not yet closed when he returned

6    (Compl. ¶ 13), and that upon entering, he "observed a Caucasian woman making a purchase

7    at the register," after which he was asked to the leave the store in a hostile manner by a

8    white employee without being allowed to purchase candles. (*Id.* ¶¶ 9–11.) He alleges that

9    "[t]he male employee gave service to the Caucasian female customer that was in the store

10   at the same time as [Plaintiff] but denied such service to [Plaintiff]." (*Id.* ¶ 13.) These

11   allegations show that the Caucasian woman and Plaintiff were similarly situated because

12   both were engaged—or attempted to engage—in the same activity: making a purchase at

13   the Dollar Tree store. The fact that the Caucasian woman was at the register when Plaintiff

14   entered the store to shop indicates that each person was in a different stage of the same

15   activity. The fact that the Caucasian customer was at the register leads to a commonsense

16   inference that she was allowed to complete her purchase, but Plaintiff was not permitted to

17   make a purchase at all. (*Id.* ¶ 11.) While it also may be true, as Defendant suggests (MTD

18   at 4), that Plaintiff's claims are undercut by the fact that he was able to make a purchase at

19   the same store earlier that evening, this fact does not impact whether he and the Caucasian

20   customer were similarly situated when he returned to make another purchase.

21         Defendant cites several cases to support its argument that Plaintiff fails to allege any

22   non-conclusory statement to establish intentional discrimination. (Reply at 6–7, citing

23   *Moralez v. Whole Foods Mkt. Cal., Inc*., No. CV-14-05022-EMC, 2016 WL 845291 (N.D.

24   Cal. Mar. 4, 2016) (dismissing case because the plaintiff pled no non-conclusory facts to

25   demonstrate racial animus); *Williams v. Tobener*, CV-16-02209 SBA, 2016 WL 5235039,

26   at *2 (N.D. Cal. Sept. 22, 2016) (dismissing case for the same reason); *Snoqualmie*, 186 F.

27   Supp. 3d at 1163 (finding no sufficient comparator to raise an inference of a racial animus).

28   Here, however, Plaintiff alleges more than mere conclusory statements. Plaintiff's factual

allegations, taken as true and construed in the light most favorable to Plaintiff as they must be at this stage of the litigation, allow for a reasonable inference that he was treated differently than a similarly situated customer on account of his race.

Finally, the Court also finds that Plaintiff has sufficiently pleaded that race was a but-for cause of the denial of his right to contract under Section 1981. *See Comcast*, 140 S. Ct. at 1019. To support his argument that he has sufficiently pleaded his Section 1981 claim, Plaintiff points to his allegations regarding the comparator, as well as his allegations regarding the store employees' hostile treatment of him, including the male employee "cursing [Plaintiff] and threatening to call the police"; the female employee's acquiescence to this hostile conduct and her failure to help Plaintiff; and the store manager's "inaction the following day." (Resp. at 4–6.[2]) Taken as true and construed in the light most favorable to him, Plaintiff's allegations are sufficient to support a reasonable inference that, but for his race, he would not have been denied his right to contract under Section 1981. Therefore, the Court will deny Defendant's motion to dismiss Plaintiff's Section 1981 claim.

### B.    ACRA Claim

Plaintiff's second claim for relief alleges race discrimination in violation of A.R.S. § 41-1442(B). Defendant moves to dismiss this claim on the grounds that Plaintiff's allegations fail to support an inference of intentional discrimination. (MTD at 5.) Plaintiff responds that "[i]t is well settled in Arizona that A.R.S. § 41-1442 is similar to 42 U.S.C. § 1981" and "adopts the same arguments" as to his Section 1981 claim. (Resp. at 7.)

The ACRA provides that no person shall be denied accommodations "because of race . . . nor shall distinction be made with respect to any person based on race . . . in connection with the price or quality of any item, goods or services offered by or at any

---

[2] Plaintiff contends that the Court's decision in *Gray v. Saks Fifth Avenue* supports his argument that he has sufficiently pleaded a Section 1981 claim. (Resp. at 4.) However, as Defendant observes (Reply at 5–6), *Gray* is distinguishable. In *Gray*, a black man was accused of assaulting a department store staff member and escorted out of the store by security guards. No. CV-20-01987-PHX-JJT, 2022 WL 860655, at *1 (D. Ariz. Mar. 23, 2022). The defendant argued that plaintiff's claim failed because he did not "allege an intent to shop." *Id*. at *3. Thus, the Court's analysis in *Gray* focused on whether the plaintiff alleged an intent to shop, not on whether he sufficiently alleged intentional discrimination. *Id*. Moreover, unlike Plaintiff here, the plaintiff in *Gray* proceeded *pro se* and "courts must liberally construe the pleadings of *pro se* plaintiffs in civil rights cases." *Id*.

place of public accommodation." A.R.S. § 41-1442(B). It defines "places of public accommodation" to include "all establishments which cater or offer their services, facilities or goods to or solicit patronage from the members of the general public." *Id*. § 41-1441(2).

This Court has observed that "[t]hough there is minimal case law construing this statute, Arizona courts have previously held that the requisite standard for discrimination under the statute is the same as that of Section 1981." *York*, 2019 WL 3802535, at *4 (citing *Lopez v. Cheesecake Factory*, 2016 Ariz. Super. LEXIS 654, at *6 (Super. Ct. Ariz. Jan. 26, 2016) (noting that the statute is "very similar to 42 U.S.C. § 1981")). Thus, courts in this district have employed "the same analytical framework" to consider Section 1981 claims and public accommodation-discrimination claims under the ACRA based on the same factual allegations. *See, e.g.*, *id.* at *4–5; *Fuentes v. Planet Fitness*, CV-21-00818-PHX-DLR, 2022 WL 3577275, *1 (D. Ariz. Aug. 19, 2022).

The Court has already determined that Plaintiff has pleaded sufficient facts to support a reasonable inference of intentional discrimination under this analytical framework, thereby stating a Section 1981 claim. The Court therefore is unpersuaded by Defendant's argument that Plaintiff's allegations fail to support an inference that it refused to serve him, or took any action against him, because of his race. (Reply at 5.) For the same reasons that the Court finds that Plaintiff has sufficiently pleaded a Section 1981 claim, it finds that Plaintiff has sufficiently pleaded a claim under the ACRA. Therefore, the Court will deny Defendant's motion to dismiss Plaintiff's ACRA claim.

**IT IS THEREFORE ORDERED** denying Defendant Dollar Tree's Motion to Dismiss (Doc. 11).

**IT IS FURTHER ORDERED** that Defendant Dollar Tree shall file an Answer to Plaintiff's Complaint (Doc. 1) within the time limit set forth in the Federal Rules of Civil Procedure. The Court will set a case management conference by separate Order.

Dated this 5th day of December, 2022.

Honorable John J. Tuchi
United States District Judge